IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GILLAN AND HARTMANN, INC., | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | NO. 15-1035 |
| v. | : | |
| | : | |
| KIMMEL BOGRETTE ARCHITECTURE | : | |
| + SITE, INC., MARTIN D. KIMMEL & | : | |
| MONTGOMERY COUNTY COMMUNITY | : | |
| COLLEGE, | : | |
| Defendants. | : | |
| | : | |

**Jones, II    J.**                                                                                             **May 28, 2015**

## MEMORANDUM

### I.    Procedural History

On February 27, 2015, Gillan and Hartmann, Inc. ("Plaintiff") filed a Complaint against Kimmel Bogrette Architecture + Site, Inc. and Martin D. Kimmel ("Kimmel"), and Montgomery County Community College ("MC3") (collectively "the Defendants"). (Dkt No. 1 [hereinafter Compl.].) On March 11, 2015, Plaintiff filed an Amended Complaint against the same Defendants. (Dkt No. 2 [hereinafter AC].)

On March 13, 2015, Plaintiff moved for a Temporary Restraining Order ("TRO") and a Preliminary Injunction. (Dkt No. 3 [hereinafter Pl Mot.].) On March 16, 2015, MC3 filed a Response in Opposition to Plaintiff's Motion. (Dkt No. 5.) On March 19, 2015, Kimmel filed a Response in Opposition to Plaintiff's Motion. (Dkt No. 13.) On March 19, 2015, the Court ordered that Plaintiff's Motion for a TRO was denied, but scheduled a Preliminary Injunction hearing. (Dkt No. 15.) On March 24, 2015, Plaintiff filed a Reply in Support of its Motion for a Preliminary Injunction. (Dkt No. 18 [hereinafter Pl. Rep. to PI Mot.].) On March 24, 2015, the Court held a Preliminary Injunction hearing with all parties. Following the hearing, the parties represented to the Court that settlement may be possible, so the Court suspended the case pending further settlement discussion. (Dkt No. 20.) Following notice from the parties that settlement discussions had failed, the Court removed this case from suspense. (Dkt No. 23.)

On March 20, 2015, MC3 filed a Motion to Dismiss and for Attorneys' Fees. (Dkt No. 16 [hereinafter MC3 MTD].) On April 3, 2015, Plaintiff filed a Response. (Dkt No. 25.)

On March 31, 2015, Kimmel filed a Motion to Dismiss and for Attorneys' Fees. (Dkt No. 21 [hereinafter Kimmel MTD].) On April 14, 2015, Plaintiff filed a Response. (Dkt No. 31.)

On April 3, 2015, Plaintiff filed a Motion to amend its Amended Complaint to add an additional party. (Dkt No. 26 [hereinafter Pl. Mot. to Amend].) On April 6, 2015, MC3 filed a Response. (Dkt No. 27.) On April 23, 2015, Kimmel filed a Response. (Dkt No. 32.) On April 27, 2015, Plaintiff filed a praecipe to attach the Amended Complaint to its original motion to amend. (Dkt No. 33.)

On April 6, 2015, the Court held a status telephonic conference with all parties. At this conference, the parties consented to referral to the Honorable Lynne A. Sitarski, United States Magistrate Judge, for a settlement conference. (Dkt No. 28.) The Court's order required the parties to "promptly contact Chambers with a status update" following the conference. (Dkt No. 28.) On May 27, 2015, the Court received in Chambers a letter from the parties dated May 21, 2015, apprising the Court that settlement discussions had failed.

Thus, there is one ripe motion for a preliminary injunction, two ripe motions to dismiss, two ripe motions for attorneys' fees, and one ripe motion to amend the Amended Complaint. The Court denies Plaintiff's Motion for Preliminary Injunction, grants both Defendants' Motions to Dismiss, denies both Defendants' Motions for Attorneys' Fees, and denies Plaintiff's Motion to amend the Amended Complaint.

## II.     Plaintiff's Motion for a Preliminary Injunction is DENIED.
### a.  Facts for Consideration in Preliminary Injunction

Based upon the pleadings, record papers, affidavits, exhibits, and the evidence presented at the hearing held March 24, 2015, the pertinent facts are as follows.

Plaintiff is an engineering firm that performs mechanical, electrical, plumbing, fire protection, and technology engineering services. (AC ¶ 8.)[1] Plaintiff is a Pennsylvania corporation. (AC ¶ 1.) Kimmel is an architecture and engineering firm that performs architectural

---

[1] Plaintiff attached a verified affidavit from John P. Gillan, owner of Plaintiff, to their Motion for a Preliminary Injunction. The affidavit incorporated by reference all factual averments in the Amended Complaint. (Pl. Mot., Ex. 3, Verified Affidavit of John P. Gillan [hereinafter Gillan Aff.] ¶ 2.) For simplicity, the Court will thus cite directly to the Amended Complaint.

and engineering work for construction projects, specializing in work for municipalities and universities. (AC ¶ 9.) "Kimmel" includes a Pennsylvania corporation and a resident of Pennsylvania. (AC ¶ 2.) MC3 is a two year, community college. (AC ¶ 10.) MC3 is a Pennsylvania municipal corporation. (AC ¶ 3.)

Plaintiff has alleged claims under federal copyright law and various Pennsylvania law claims. Given that there is no diversity of citizenship between the parties, jurisdiction in this Court is proper only pursuant to 28 U.S.C. §1331 due to Plaintiff's federal copyright law claim. (AC ¶ 5.) The Court has supplemental jurisdiction over the Pennsylvania claims pursuant to 28 U.S.C. § 1367(a). (AC ¶ 7.)

In May, 2010, MC3 contracted Kimmel to perform a feasibility study to identify and define the design and construction work for an envisioned Health Sciences Center ("the Project"). (AC ¶ 11.) On December 22, 2010, Kimmel issued a final report on the Project. (AC ¶ 13.) On May 8, 2013, MC3 issued a Request for Proposals for Architectural and Engineering Services ("RFP") soliciting proposals for architectural firms to perform design services required for the Project. (AC ¶ 15.) MC3 selected Kimmel, and entered into a written prime consulting contract with Kimmel for architectural design services ("the Prime Agreement") on October 14, 2013. (AC ¶ 16; AC, Ex. A [hereinafter Prime Agreement].) Plaintiff entered into a sub-contracting contract ("the Contract") with Kimmel for the creation of mechanical, electrical, plumbing, fire protection, and technology engineering drawings on October 14, 2013. (AC ¶ 19; AC, Ex. A [hereinafter Contract].) Both the Contract and the Prime Agreement are based on modified versions of standard forms issued by the American Institute of Architects ("AIA"). The Prime Agreement is incorporated into the Contract. (Contract § 1.1.)

The copyrighted materials in dispute include mechanical, electrical, plumbing, fire protection, and technology engineering design plans, specifications, and engineering calculations (collectively "the copyrighted design"). (Pl. Mot. at 4; AC ¶ 20.) The copyrighted design was registered by Plaintiff on February 20, 2015. (Gillan Aff. ¶ 8; AC ¶ 21.) Following termination, Kimmel did not fully compensate Plaintiff for the work Plaintiff completed on the design. (Gillan Aff. ¶ 14; AC ¶ 25.) Kimmel and MC3 continue to use the copyrighted design. (Gillan Aff. ¶ 10; AC ¶ 27.)

The main point of dispute between the parties is whether or not the Contract granted Kimmel an exclusive license over Plaintiff's instruments of service, including the copyrighted design. In its section of "Copyrights and Licenses," the Contract states that:

> Upon execution of the Agreement, the Consultant [Plaintiff] grants to the Architect [Kimmel] a license to use the Consultant's Instruments of Services in the same manner and to the same extent as the Architect has granted a license to the Owner [MC3] in the Prime Agreement.

(Contract § 7.1.)

> In its section titled "Copyrights and Licenses," the Prime Agreement states that:

> Drawings, specifications and other documents, including those in electronic form, prepared by the Architect [Kimmel] and/or the Architect's Consultants [e.g. Plaintiff] for this Project are the property of the Owner [MC3] who shall be vested with all common law, statutory and other reserved rights.

(Prime Agreement § 7.2.) The Additions and Deletions Report for the Prime Agreement shows that MC3 and Kimmel intentionally excluded the AIA's form language that would instead have allowed Kimmel to retain ownership over their instruments of service, including all drawings and specifications, (AC, Exs. 1-2, Additions and Deletions Report § 7.2), and omitted all language regarding the granting of a "nonexclusive license" to MC3. (Additions and Deletions Report § 7.2).

Further, the Contract incorporates the Prime Agreement's termination language. (Contract § 9.1.) The Prime Agreement repeatedly states that upon termination, "the Architect shall transfer to Owner in the manner, to the extent and at the time directed by Owner, all drawings, plans, specifications, supplies, materials and other property produced as part of, or required of, Architect's services in connection with the Project." (Prime Agreement § 9.8.)

### b. Analysis

Injunctive relief is appropriate where the movant has shown that (1) there is a reasonable probability that the movant will succeed on the merits; (2) irreparable harm will result if relief is not granted; (3) that harm to other interested persons if the injunctive relief is granted will not outweigh the harm to the movant if the injunctive relief is not granted; (4) and that the public interest weighs in favor of granting the injunctive relief. *Nutrasweet Company v. Vit-Mar Enterprises*, 176 F.3d 151, 153 (3d Cir. 1999).

First, to succeed on the merits of Plaintiff's copyright infringement claim, Plaintiff must establish: (1) ownership of a valid copyright, and (2) unauthorized copying of original elements of Plaintiff's work. *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002).

The debate between the parties is whether or not the use was "unauthorized" based on the provisions of the Contract and the Prime Agreement. Plaintiff argues that the Contract only grants a "license" from Plaintiff to Kimmel insomuch as the Prime Agreement grants MC3 a "license" from Kimmel. Plaintiff argues that because the Prime Agreement excludes the word "license" from its granting of "property" rights, the Contract grants no "license" from Plaintiff to Kimmel. Defendants argue that the term "license" in the Contract clearly contemplates the language in the Prime Agreement's "Copyrights and Licenses" section, even if such sub-section language does not use the word "license." Specifically, Defendants argue that the Prime Agreement's "Copyrights and Licenses" section grants "property" rights, which is the same as the granting of an exclusive license. Simply put, Plaintiff argues that because the Prime Agreement does not explicitly use the word "license" in its language granting property rights under the heading "Copyrights and Licenses," the Contract grants nothing. Defendant argues that because the Prime Agreement grants property rights in its section titled "Copyrights and Licenses," the Contract grants an exclusive license.

Reading the Contract and the Prime Agreement, the Court agrees with Defendants. By incorporating the Prime Agreement's "Copyrights and Licenses" section, the Contract's language unambiguously grants Kimmel an exclusive license to the relevant copyrighted design. The Contract states that Kimmel is granted a "license" to Plaintiff's copyrighted design insofar as the Prime Agreement grants MC3 a "license." This language clearly incorporates the Prime Agreement's section on "Copyrights and Licenses." The Prime Agreement's "Copyrights and Licenses" section states that all drawings, etc., by Kimmel "are the property" of MC3 and that MC3 is "vested with all common law, statutory and other reserved rights." In fact, the section "intentionally omitted" any language that reserved property rights to Kimmel or that granted MC3 only a "nonexclusive license."

While this sub-section does not itself use the word "license," it is in the section titled "Licenses." The sub-section language is clearly explaining that the type of "license" being provided is an exclusive license. As the Copyright Act explains, "[a] 'transfer of copyright

5

ownership' is an…exclusive license." 17 U.S.C. § 101. In conclusion, the Court finds that the Contract is unambiguous in granting the type of license explained in the Prime Agreement's "Copyrights and Licenses" section. The Prime Agreement's "Copyrights and Licenses" section is unambiguously awarding an exclusive license. Thus, the Contract awards Kimmel an exclusive license over Plaintiff's copyrighted design. This conclusion is further consistent with the Contract's incorporation of the Prime Agreement's termination language.

In the alternative, Plaintiff's second theory is that Kimmel breached the Contract, which voided the whole of the Contract, including the granting of the exclusive license. (Pl. Mot. at 5.) Given that the granting of the exclusive license was voided, argues Plaintiff, any subsequent use of the copyrighted design is in fact a copyright infringement. (Pl. Mot. at 5.) Such a claim may be actionable. *See, e.g.*, *Inst. for Motivational Living, Inc. v. Sylvan Learning Ctr., Inc.*, 2008 WL 282341, at *3 (W.D. Pa. 2008) (quoting *Tasini v. New York Times Co., Inc.*, 206 F.3d 161, 170-71 (2d Cir. 2000)) ("[T]he fact that a party has licensed certain rights to its copyright to another party does not prohibit the licensor from bringing an infringement action where it believes the license is exceeded or the agreement breached .... [A]n infringement claim may be brought to remedy unauthorized uses of copyrighted material.").

However, the Court cannot find merit in such an argument in this case. In *Inst. for Motivational Learning*, the Court found this type of theory well pled because the contract at issue stated that Defendant possessed a "perpetual license to use the Materials, including the Assessments, provided under the Agreement, …provided that [Defendant] complies with the terms of the Agreement…" *Id.* at *3. In contrast, in this case, the Contract granted the exclusive license "[u]pon execution of the Agreement…" (Contract § 7.1.) Because the granting of the exclusive license was not conditioned upon full payment, Kimmel's failure to fully compensate Plaintiff under the terms of the Contract sounds in breach of contract, not in copyright. *See, e.g.*, *Ahadams & Co., P.C. v. Spectrum Health Services, Inc.*, 40 F.Supp.3d 456, 460 n. 7 (E.D. Pa. 2014) (finding that an unresolved breach of contract fee dispute case pending in state court did not prevent the federal court from determining whether or not the contract at issue in the state case granted an enforceable license that invalidated a copyright infringement claim); *Beholder Productions, Inc. v. Catona*, 629 F.Supp.2d 490, 495 (E.D. Pa. 2009) ("If Defendants have failed to pay invoices owed under the contract – they have breached the contract…Defendants, however, could not have infringed on [Plaintiff's] copyright because [Plaintiff] gave Defendants

an implied license…"); *Lowe v. Loud Records*, 2003 WL 22799698, at *2 (E.D. Pa. 2003) *aff'd*, 126 F. App'x 545 (3d Cir. 2005) (non-precedential) (quoting *Sun Microsystems, Inc. v. Microsoft Corp.,* 188 F.3d 1115, 1121 (9th Cir. 1999) ("Generally, a copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement and can only sue for breach of contract"); *see also Fontana v. Harra*, 2013 WL 990014, at *5 (C.D. Ca. 2013) ("Failure to provide payment in full can only void an implied license if the agreement giving rise to the license contains a conditions precedent clause requiring full payment.").

Given that Kimmel has an exclusive license over the copyrighted design, Kimmel's continued use of the copyrighted design is not an unauthorized use. Thus, Plaintiff has failed to prove that it will likely succeed on the merits of this claim. The Court denies the Motion for a Preliminary Injunction.

### III. Defendants' Motions to Dismiss are GRANTED. Defendants' Motions for Attorneys' Fees are DENIED.

#### a. Facts

When deciding a motion to dismiss under 12(b)(6), the "court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). For the purpose of deciding the instant Motion, the Court must take all alleged facts as true. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted).

The Court adopts its facts section from the Preliminary Injunction section *supra*. In that section, the Court's explanation of the Contract and the Prime Agreement relied only upon exhibits that were attached to Plaintiff's Amended Complaint. The Court need not repeat the Contract and Prime Agreement's language herein.

The Court cannot rely upon any affidavits attached to the Motion for Temporary Restraining Order, or any response thereto, in deciding the Motion to Dismiss. However, the Gillan Affidavit incorporated by reference all factual averments from the Amended Complaint.

7

The facts section *supra* contains no factual averments that are not appropriately considered when deciding a Motion to Dismiss. The Court incorporates by reference such factual averments herein for its analysis of Defendants' Motion to Dismiss.

### b. Analysis

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233 (internal quotation and citation omitted). After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted).

#### i. Plaintiff has failed to state a claim for copyright infringement.

Plaintiff must establish: (1) ownership of a valid copyright, and (2) unauthorized copying of original elements of Plaintiff's work. *Dun & Bradstreet Software Servs., Inc.*, 307 F.3d at 206; *see also Kay Berry, Inc. v. Taylor Gifts, Inc.,* 421 F.3d 199, 203 (3d Cir. 2005). A license is a defense to a copyright infringement claim. *Lowe*, 2003 WL 22799698, at *2.

As previously addressed, the Court finds that the Contract awarded Kimmel an exclusive license over Plaintiff's copyrighted design. Further, as previously addressed, the Court finds that the Contract contained no conditions precedent that conditioned the granting of the exclusive license on full payment. Thus, Defendants' failure to provide payment in full did not invalidate the granting of the exclusive license. Kimmel's exclusive license to the copyrighted design is a defense to the copyright infringement claim. Plaintiff's claims against both Defendants for copyright infringement must be dismissed.

### ii. The Court declines to exercise supplemental jurisdiction over the remaining state claims.

Because Plaintiff's sole federal claim is dismissed, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims as to all Defendants. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a [pendant state law claim] if ... the district court has dismissed all claims over which it has original jurisdiction…"); *Borough of W. Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir. 1995) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must decline* to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.") (emphasis added); *see also Ahadams & Co., P.C.*, 40 F. Supp. 3d at 466.

### iii. Defendants' Motions for Attorneys' Fees is denied.

Under the Copyright Act, this Court in its discretion may award "a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The Court should consider the following nonexclusive factors when determining whether to afford attorneys' fees: frivolousness, motivation, objective unreasonableness (both in the factual and in the legal component of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 (1994) (quoting *Lieb v. Topstone Industries, Inc.,* 788 F.2d 151, 156 (1986)). The Court's exercise of discretion should be approached in an evenhanded manner. *Lowe*, 2004 WL 527831, at *2 (citing *Lieb,* 788 F.2d at 156).

First, "[f]rivolousness" means "lacking any plausible merit." *Warren Pub. Co. v. Spurlock*, 2010 WL 760311, at *4 (E.D. Pa. 2010) (quoting *Matthew Bender & Co. v. West Publ'g Co.,* 240 F.3d 116, 126 (2d Cir. 2001)). Defendants argue that Plaintiff "has chosen to disregard the plan [*sic*] language of the Prime Agreement and Subcontractor Agreement in bringing its claims against MCCC." (MC3 MTD at 14.) The Court has held that the Contract was unambiguous in awarding Kimmel an exclusive license. In addition, the Court held that the Contract clearly contained no conditions precedent tied to full payment in granting an exclusive license.

In applying these facts to the case law in this Circuit, the Court finds *Lowe* instructive.[2] In *Lowe*, the Court granted attorneys' fees to Defendants because Plaintiff's testimony and affidavit revealed that he had granted Defendants a nonexclusive license to his copyright. *Lowe*, 2004 WL 527831, at *3. In this case, the Contract signed by Plaintiff and entered into evidence by Plaintiff unambiguously granted Kimmel an exclusive license not conditioned on full payment.

However, Plaintiff's second theory of the case – that the granting of the exclusive license was conditioned on fulfillment of the Contract, including payment – was a well-argued, though flawed, theory. The Court's determination therein relied not on settled Third Circuit precedent, but thoughtful consideration of many different pieces of persuasive authority. The Court had to thoroughly analyze the underlying facts, legal issues, and persuasive precedent to make such a determination. The Court finds that Plaintiff's second theory was not frivolous or objectively unreasonable because it was a reasonable, though incorrect, legal argument.

Second, Kimmel argues that these claims were brought with an improper motivation of jeopardizing a large-scale project as leverage to collect unpaid fees. (Kimmel MTD at 15-16.) The Court finds nothing in the record to support such a motivation.

Third, Defendants argue that an award of attorneys' fees would help deter other persons from holding "a project hostage with a claim of copyright infringement, despite it being aware and authorizing the use of its purportedly 'copyrighted' materials, based solely on a fee dispute." (MC3 MTD at 15; *see also* Kimmel MTD at 15-16.)[3] The Court again finds that Plaintiff's second theory of the case was a reasonable argument; the argument of which appropriately encourages the development of Copyright Act case law.

In conclusion, the Court determines that attorneys' fees are not warranted.

## IV.   Plaintiff's Motion to Amend is DENIED.

Plaintiff has moved to amend its Amended Complaint to add the engineering firm that replaced them on the Project because they will be using "the Copyrighted Design [which]

---

[2] Defendants cited to *4C, Inc. v. Pouls*, 2012 WL 2343042 (D. Del. 2012). This case is not a helpful comparator as the egregious conduct in that case was that plaintiff brought a copyright claim without having registered a copyright. *Id.* at *2. Such facts are not at issue in this case.

[3] The Court notes that both parties cite to *Ahadams & Co., P.C.*, 40 F.Supp.3d at 465, for this proposition. *Ahadams* does not address the awarding of attorneys' fees. The Court does not find this case instructive as to this issue.

constitutes copyright infringement." (Pl. Mot. to Amend at 2-3.) "Granting leave to amend is within the discretion of the district court." *Perelman v. Perelman*, 919 F. Supp. 2d 512, 516 (E.D. Pa. 2013) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971). Given that the Court has dismissed Plaintiff's copyright infringement claims as to MC3 and Kimmel, the Court finds that amendment to allege the same claims against a third defendant would be futile. Given that amendment would be futile, the Court denies the Motion. *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000).

## V. Conclusion

The Court denies Plaintiff's Motion for a Preliminary Injunction. The Court dismisses Plaintiff's claim against all Defendants for copyright infringement. The Court declines to exercise supplemental jurisdiction over the remaining state claims. As such, this case is dismissed. Further, the Court does not in its discretion award attorneys' fees.

BY THE COURT:

/s/ C. Darnell Jones, II

_____

C. Darnell Jones, II    J.